# CASE NO. 23-2574

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

AMBER COOK,
individually and on behalf of all others similarly situated,
*Plaintiff / Appellant*

v.

GAMESTOP, INC.,
*Defendant / Appellee.*

---

*On Appeal from an Order Entered in the United States District Court for
the Western District of Pennsylvania in Case No. 2:22-cv-01292
Hon. J. Nicholas Ranjan, United States District Judge*

---

## APPELLANT AMBER COOK'S PETITION
## FOR PANEL REHEARING OR REHEARING EN BANC

---

**LYNCH CARPENTER, LLP**
Gary F. Lynch
Kelly K. Iverson
Jamisen A. Etzel
Connor P. Hayes
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

*Attorneys for Appellant-Petitioner*

# TABLE OF CONTENTS

STATEMENT PURSUANT TO FED. R. APP. P. 40(b) ............................1

INTRODUCTION....................................................................................3

RELEVANT FACTS AND PROCEDURAL HISTORY ............................7

    A. Factual background. .....................................................................7

    B. Procedural background and the panel's decision. ........................9

REASONS FOR GRANTING THE PETITION.....................................11

I.  The panel decision conflicts with this Court's precedents in *Google II,* and *Nickelodeon*, which held that invasion of the right to privacy in internet communications is an Article III harm...................................................................................................11

    A. The Article III injury identified in *Nickelodeon* and *Google II* did not depend on defendants' promises to protect privacy.........11

    B. The types of communications at issue in *Google* and *Nickelodeon* were not any more personal or sensitive than Cook's communications with GameStop—but the historical right to privacy protects more than what a given court deems "sensitive" material...................................................................14

II.  The panel decision implicates issues of extreme importance..........17

CONCLUSION .....................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                              Page(s)

*Barclift v. Keystone Credit Servs., LLC,*
   93 F.4th 136 (2024) ................................................................ passim

*Bartnicki v. Vopper,*
   200 F.3d 109 (3d Cir. 1999) ........................................................ 15

*Bartnicki v. Vopper,*
   532 U.S. 514 (2001) ............................................................... 15, 18

*DiNaples v. MRS BPO, LLC,*
   934 F.3d 275 (3d Cir. 2019) .......................................................... 1

*In re Facebook, Inc. Internet Tracking Litig.,*
   956 F.3d 589 (9th Cir. 2020) ........................................................ 6

*In re Google Inc. Cookie Placement Consumer Priv. Litig.,*
   806 F.3d 125 (3d Cir. 2015) .......................................................... 1

*In re Google Inc. Cookie Placement Consumer Priv. Litig.,*
   934 F.3d 316 (3d Cir. 2019) ......................................... 1, 3, 10, 11

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.,*
   846 F.3d 625 (3d Cir. 2017) ............................................... 1, 4, 11

*In re Nickelodeon Consumer Priv. Litig.,*
   827 F.3d 262 (3d Cir. 2016) .................................................. passim

*Jones v. Ford Motor Co.,*
   85 F.4th 570 (9th Cir. 2023) ....................................................... 2, 6

*Knudsen v. MetLife Grp., Inc.,*
   117 F.4th 570 (3d Cir. 2024) ....................................................... 11

*Pileggi v. Washington Newspaper Publ'g Co., LLC,*
   --- F.4th ---, 2025 WL 2319550 (D.C. Cir. Aug. 12, 2025) .................... 1, 6

*Sosa v. Martin County,*
 57 F.4th 1297 (11th Cir. 2023)............................................................ 12

*Spokeo v. Robins,*
 578 U.S. 330 (2016) ...............................................................................4

*Susinno v. Work Out World Inc.,*
 862 F.3d 346 (3d Cir. 2017)...............................................................1, 4

*TransUnion LLC v. Ramirez,*
 594 U.S. 413 (2021) ............................................................................1, 4

Statutes

18 Pa. C.S.A. §§ 5701...............................................................................2

Other Authorities

Restatement (Second) of Torts § 652(b) ...................................................5

*The Video Privacy Protection Act As A Model Intellectual Privacy
 Statute*, 131 Harv. L. Rev. 1766 (2018) ............................................ 16

**STATEMENT PURSUANT TO FED. R. APP. P. 40(b)**

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decisions of the United States Court of Appeals for the Third Circuit and the Supreme Court of the United States, and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court.

The panel's decision is contrary to the decision of the Supreme Court in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

The panel's decision is also contrary to this Court's decisions in *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (2024); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019) ("*Google II*"); *DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3d Cir. 2019); *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015) ("*Google I*"); and *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017).

The panel's decision conflicts with authoritative decisions of other Courts of Appeals, for example, *Pileggi v. Washington Newspaper Publ'g*

*Co., LLC*, --- F.4th ---, No. 24-7022, 2025 WL 2319550 (D.C. Cir. Aug. 12, 2025); *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023).

This proceeding involves a question of exceptional importance, which is whether individuals have a concrete right to privacy in their electronic communications, as the Pennsylvania legislature intended to safeguard with the passage of the Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. §§ 5701, *et seq*.

/s/ Jamisen A. Etzel

## INTRODUCTION

The panel's decision in this case should be reheard en banc because it stands in direct contradiction with *Google II* and *Nickelodeon*, which both held that alleged invasions of the right to privacy in internet communications are concrete and particularized harms for Article III purposes. *See Google II,* 934 F.3d at 325 ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."); *Nickelodeon*, 827 F.3d at 274 ("The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information.").

Those cases involved similar types of surreptitious internet tracking, similar causes of action, and the exact same kind of privacy harm that Petitioner Amber Cook alleged here. The panel's decision not to follow *Google II* and *Nickelodeon* rested on a fact that was immaterial to those holdings—whether the defendants had promised not to engage

in the type of conduct alleged. *See* Opinion at 15–16.[1] But privacy rights do not depend on the promises of others.

Beyond *Google II* and *Nickelodeon*, the panel opinion also deviates from the established process this Court has used over and over again to apply the Supreme Court's holdings in *TransUnion* and *Spokeo v. Robins*, 578 U.S. 330 (2016). As explained in *Barclift*, this Court looks to the "kind of harm at issue" and asks whether it has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts. 93 F.4th at 145. As the Supreme Court said in *TransUnion*, an "exact duplicate" is not required, 594 U.S. at 424, and this Court has disavowed the "element-by-element" comparison to common law torts that some other courts use to assess an Article III harm. *See Barclift*, 93 F.4th at 143–44; *Susinno*, 862 F.3d at 351–52 ("a close relationship does not require that the newly proscribed conduct would 'give rise to a cause of action under common law.'") (quoting *Horizon*, 846 F.3d at 639).

---

[1] The opinion is addended to this Petition, and page citations herein are to that slip opinion.

But the panel here engaged in precisely that form of element-by-element comparison, ultimately determining that Cook suffered no Article III harm because, in short, her allegations would not suffice to state a claim for the common law privacy torts of intrusion upon seclusion or public disclosure of private facts. Op. at 9–12, 14 ("Because Cook does not plausibly allege that she was secluded, in solitude, or that her website activity involved her private affairs, she does not allege a kind of harm sufficient for standing.").

This approach led the panel to clear error. Nonconsensual electronic wiretapping invades personal privacy by violating one's right to conduct his or her affairs away from the prying eyes of the uninvited. This is a core privacy interest that has long been protected in America, *see* Restatement (Second) of Torts § 652(b) (recognizing wiretapping as an invasion of privacy), and federal courts have routinely affirmed state and federal legislatures' prerogative to prohibit technology-assisted eavesdropping, regardless of the topic of the conversation, and regardless of whether the defendant promised not to wiretap. Indeed, the panel's decision places it at odds with the rulings of several sister circuits, creating a conflict among the federal courts of appeals. *See*

*Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("With respect to constitutional injury-in-fact, the relevant law is settled. A statute that codifies a common law privacy right 'gives rise to a concrete injury sufficient to confer standing.'") (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)); *see also Pileggi*, 2025 WL 2319550, at *5 (concluding that website operator's disclosure of online video viewing information to Meta caused a concrete privacy injury).

This divergence in authority underscores the need for clarity on the question presented and without it, suggests that ultimate resolution by the Supreme Court will be necessary to provide consistency nationwide.

The full Court should rehear this case to maintain consistency in the Court's precedents regarding Article III injuries, particularly in the context of electronic privacy.

## RELEVANT FACTS AND PROCEDURAL HISTORY

### A.     Factual background.

Respondent GameStop, Inc. is an online and brick-and-mortar retailer that sells video gaming consoles, video games, and related accessories. Appx41. GameStop operates the website www.gamestop.com, as well as all of its subpages. Appx42. Unbeknownst to visitors to www.gamestop.com, GameStop intentionally procures and embeds computer code ("Session Replay Code") developed by third-party companies such as Microsoft Corporation ("Session Replay Providers") that functions as an electronic wiretap. Appx30–31, Appx 42–44.

When used by a website operator like GameStop, Session Replay Code works by instructing the browser of the visitor (such as Amber Cook) to intercept the visitor's communications with the website, instantaneously capturing "over 30 different categories of information," including the URLs of each visited page, a user's mouse movements and clicks, text inputted by the user on the website (such as any searches), how far down a webpage a user scrolls, and many other technical data

points about the user's device, location, visit date and time, and length of the session. Appx42, Appx46–47, Appx53.

The visitor's communications with the website are intercepted in real time by Session Replay Code and instantly transmitted to servers owned by the third-party Session Replay Providers. Appx42–43, Appx 46–47.

Amber Cook browsed GameStop's website, looking at different products, typing in searches, and adding an item to her virtual shopping cart. Appx31, Appx44–45. Without her knowledge or consent, these communications with GameStop were intercepted by Session Replay Code that GameStop added to its website, allowing Microsoft to receive Cook's communications while on the site. Appx45–47, Appx53.

Cook brought an action against GameStop in the United States District Court for the Western District of Pennsylvania, alleging two claims, one for aiding and abetting an interception of her electronic communications in violation of WESCA, and another for the common law tort of invasion of privacy / intrusion upon seclusion. Appx51–53 (stating WESCA claim); Appx53–55 (stating intrusion upon seclusion claim).

**B. Procedural background and the panel's decision.**

In response to a Rule 12(b)(1) motion filed by GameStop, the district court dismissed Cook's claims for lack of Article III standing. Appx1–12. Cook appealed to this Court, and argument was held on April 19, 2025. Op. 1. The panel issued its decision on August 7, 2025, and affirmed. *Id.* at 1–2.

The panel concluded that Cook's alleged invasion of her right to communicate privately with GameStop was not sufficiently analogous to the harms traditionally actionable in American courts. The panel looked at the elements of two common-law privacy torts (as summarized in the Restatement), concluded that Cook could not state a claim for those torts because her claim does not sufficiently align with those elements, Op. at 9–12, and then used that conclusion to hold Cook had no Article III harm. Op. at 14 ("Because Cook does not plausibly allege that she was secluded, in solitude, or that her website activity involved her private affairs, she does not allege a kind of harm sufficient for standing.").

In response to Cook's argument that the Court's precedents in *Google II* and *Nickelodeon* held that alleged invasions of privacy into

internet communications are concrete harms, the panel found that those cases were distinguishable and not controlling. The sole distinction identified by the panel was that in those cases, the defendants has purportedly promised that they would not engage in the alleged practices. Op. at 16 ("But the allegations in *Google II* and *Nickelodeon* were "indistinguishable" from one another—and distinguishable from this case—because the "plaintiffs alleged that a third party . . . tracked their personal internet browsing information in violation of the third party's own promises not to do so.") (quoting *Google II*, 934 F.3d at 325).

## REASONS FOR GRANTING THE PETITION

**I.     The panel decision conflicts with this Court's precedents in *Google II,* and *Nickelodeon*, which held that invasion of the right to privacy in internet communications is an Article III harm.**

"Establishing an injury-in-fact at the motion to dismiss stage 'is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that [a] claimant allege[ ] some specific, identifiable trifle of injury.'" *Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 577 (3d Cir. 2024) (quoting *In re Horizon*, 846 F.3d at 633).

The panel's characterization of Cook's electronic communications with GameStop as inherently non-private for Article III purposes was an error of law that cannot be reconciled with this Court's prior precedents, which held the exact opposite. *Google II*, 934 F.3d at 325; *see also Nickelodeon*, 827 F.3d at 274.

**A.     The Article III injury identified in *Nickelodeon* and *Google II* did not depend on defendants' promises to protect privacy.**

The panel attempted to distinguish *Nickelodeon* and *Google II* by pointing to allegations in those cases that the defendants had breached promises not to engage in the type of tracking at issue. *See* Op. at 15–

16. This distinction is not valid. The Article III injury recognized by this Court in *Nickelodeon* and *Google II* was exactly the same kind as the injury suffered Cook—an invasion of the right to privacy in her electronic communications. The fact that one of the two defendants in *Nickelodeon* allegedly promised website users that it was not collecting "personal information" has nothing to do with the resulting *form* or *kind* of privacy injury. The plaintiffs were not bringing breach of contract claims, and a person's right to privacy in their electronic communications does not depend on anyone's promise not to wiretap them.

The *Nickelodeon* court did not say that Viacom's promise not to collect browsing data was relevant to the Article III injury. In the standing section of the opinion, the court makes no mention of the promise. *Nickelodeon*, 827 F.3d at 272–74. Because the promise was not material to *Nickelodeon* court's holding on Article III, it is not a valid basis for factually distinguishing the cases. *See Sosa v. Martin County*, 57 F.4th 1297, 1301 (11th Cir. 2023) ("If we treated every factual distinction with a precedential decision as necessarily material, the doctrine of precedent would lose most of its function….Judges would be

freed from the requirement that they apply the law, so long as they could unearth any factual discrepancy between binding caselaw and the case they wanted to decide a different way.") (citations omitted).

Further, Google, Inc. was also a defendant in *Nickelodeon*, but it made no privacy-related promises to the plaintiffs on Nick.com, nor could it, as Google does not own Nick.com. *Nickelodeon*, 827 F.3d at 267–70 (reciting facts that do not refer to any promises made by Google to the plaintiffs). Yet despite the absence of any promise by Google not to collect browsing behavior from Nick.com, this Court held that the plaintiffs had standing to bring a host of privacy claims (similar to the claims at issue here) against Viacom *and* Google, and proceeded to analyze the merits of whether plaintiffs sufficiently stated those claims. *See generally id.* at 274–95.

The alleged promise is not what conferred standing on the plaintiffs; otherwise, the plaintiffs would not have had standing to sue Google as a defendant. Rather, a person's allegation that their internet browsing behavior was spied on by a third party without their consent suffices as a concrete harm for Article III purposes. Neither the type of information communicated nor the presence or absence of any promises

by the eavesdroppers has anything to do with it. It is the act of spying itself, not what the spy sees or a breach of a promise not to spy, that constitutes the actionable privacy injury. *Cf. Barclift*, 93 F.4th at 158 ("the 'unlawful disclosure of legally protected information' is itself a '*de facto* injury.") (citations omitted).

**B.     The types of communications at issue in *Google* and *Nickelodeon* were not any more personal or sensitive than Cook's communications with GameStop—but the historical right to privacy protects more than what a given court deems "sensitive" material.**

The type of communications intercepted in *Google* and *Nickelodeon* were not more private or revealing than the communications intercepted in this case, so those precedents cannot be distinguished on that basis either. For example, although the data collected in *Nickelodeon* was not "personally identifying" as defined by the Video Privacy Protection Act, the plaintiffs still had Article III standing because they alleged an invasion of privacy in their internet browsing. *Nickelodeon*, 827 F.3d at 272–74. That was all the plaintiffs needed to allege for standing, not that the intercepted communications were personally identifying or particularly sensitive. The act of invading a person's privacy by prying into the person's communication

is itself harmful, and it does not matter what information the eavesdropper or interceptor acquires through the invasion.

As addressed by the Supreme Court, "[a wiretapping statute] is in fact a content-neutral law of general applicability…the basic purpose of the statute at issue is to 'protect the privacy of wire[, electronic,] and oral communications'… The statute does not distinguish based on the content of the intercepted conversations, nor is it justified by reference to the content of those conversations. Rather, the communications at issue are singled out by virtue of the fact that they were illegally intercepted – by virtue of the source, rather than the subject matter." *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001).

Regardless of the content captured, "the surreptitious interception of private communications in the first instance – [is]a highly offensive physical intrusion on the victim's private affairs." *Bartnicki v. Vopper*, 200 F.3d 109, 122 (3d Cir. 1999).

Like the letters we write, the phone calls we make, the books we read, and the videos we watch, a person's internet browsing on their computer is their private business, not anyone else's. It is against the law for the government, the media, or anyone else to use secret methods

to pry into these spheres of private life without consent.[2] The *Google* and *Nickelodeon* courts recognized this, but the panel here held that eavesdropping is not harmful unless the subject of the conversation is something "sensitive." In doing so, it improperly assessed the "degree" of harm suffered, rather than the "kind" of harm, as squarely rejected in *Barclift*, 93 F.4th at 145.

Like other forms of intrusion upon seclusion, such as opening a person's mail, tapping a phone, spying through someone's windows while hiding in the bushes, the privacy harm occurs regardless of what the intruder reads, hears, or sees while encroaching on the private sphere. The purpose of the societal rule against this behavior is to prohibit and prevent the snooping in the first place. To be sure, when

---

[2] The incident inspiring passage of the VPPA—Judge Robert Bork's video rental history being disclosed to a newspaper reporter by a store clerk—generated widespread outrage, but not because Judge Bork's video selections were anything for him to be ashamed of. His video choices "revealed nothing particularly salacious. Judge Bork favored Alfred Hitchcock films, spy thrillers, and British costume dramas; someone in the Bork household had an affinity for John Hughes movies." *The Video Privacy Protection Act As A Model Intellectual Privacy Statute*, 131 Harv. L. Rev. 1766 (2018).

someone is illegally spying on you, it does not matter if your bathrobe is on or off; your privacy is invaded either way.

The panel decision fails to respect these privacy boundaries. Under the panel's view of the law, these invasions are not actionable in federal court—regardless of the violation of common law or statutory rights—unless the victim can allege that something sufficiently "sensitive" was obtained by the spy. That must be wrong, and the panel decision needs to be overturned.

## II.    The panel decision implicates issues of extreme importance.

According to the panel, the right to privacy in electronic communications is only enforceable against defendants who allegedly breached a promise not to invade said privacy, or defendants who obtained something salacious. Extended forward, this rule of law would destroy privacy rights as we know them. To reiterate, the panel held that the *Nickelodeon* plaintiffs had an Article III harm, but Amber Cook did not, because "GameStop made no promise to refrain from collecting information," Op. at 16, whereas *Google II* and *Nickelodeon* are distinguishable because "a third party ... tracked their personal internet

browsing information in violation of the third party's own promises not to do so." *Id.*

Due to this nation's long tradition of jealously protecting privacy interests, the Supreme Court recognizes anti-wiretapping laws like WESCA and its federal counterpart as firmly within the legislative prerogative to proscribe acts that infringe personal, concrete rights, and to make those laws enforceable through private actions in federal court. *See, e.g.*, *Bartnicki*, 532 U.S. at 517–18 (characterizing individual privacy and fostering private speech as "interests of the highest order"); *id.* at 536 ("The statutes ensure the privacy of telephone conversations much as a trespass statute ensures privacy within the home.") (Breyer, J., concurring); *id.* at 543 ("To effectuate these important privacy and speech interests, Congress and the vast majority of States have proscribed the intentional interception and knowing disclosure of the contents of electronic communications.") (Rehnquist, C.J., dissenting).

Despite broad consensus on the importance of anti-wiretapping laws and the historical connection between them and the foundational, enforceable privacy right to exclude others from unauthorized eavesdropping, the panel's decision here denies that Cook and others

like her have a right to communicate privately that is enforceable in federal courts. No precedent supports the notion that federal courts' power to hear these claims should be limited to a breach-of-contract theory of harm. Given the importance of these issues, the full Court should hear this case.

## CONCLUSION

For the reasons set forth above, Petitioner Cook requests rehearing by the panel, or by the full Court en banc.

Dated: August 21, 2025      Respectfully submitted,

*/s/* Jamisen A. Etzel

Gary F. Lynch
Kelly K. Iverson
Jamisen A. Etzel
Connor P. Hayes
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
gary@lcllp.com
kelly@lcllp.com
jamisen@lcllp.com
connorh@lcllp.com

*Attorneys for Appellant-Petitioner*

# CERTIFICATE OF COMPLIANCE

This document complies with Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,320 words, as determined by the word count function of Microsoft Word 365, and it is written in Century Schoolbook 14-point, proportionally-spaced font.

Pursuant to Rule 46.1 of the Local Appellate Rules for the United States Court of Appeals for the Third Circuit, I, certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

On today's date, August 21, 2025, I filed this petition with the Clerk of the United States Court of Appeals for the Third Circuit via the Court's CM/ECF system, which will cause service on counsel for all parties of record, who are registered CM/ECF Users.

I further certify that the document was scanned for computer viruses using the current version of VirusTotal scanning service, and no virus was detected.

Dated: August 21, 2025                    */s/* Jamisen A. Etzel

# ADDENDUM

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2574
_____

AMBER COOK, individually and on behalf of all others
similarly situated,
Appellant

v.

GAMESTOP, INC.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:22-cv-01292)
District Judge:  Honorable J. Nicholas Ranjan
_____

Argued April 9, 2025
Before:  HARDIMAN, PORTER, and FISHER, *Circuit
Judges*.

(Filed: August 7, 2025)

Jamisen A. Etzel    *ARGUED*
Gary F. Lynch
Lynch Carpenter
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
         Counsel for Appellant

Jeffrey G. Landis    *ARGUED*
ZwillGen
1900 M Street NW
Suite 250
Washington, DC 20036


Sheri B. Pan
ZwillGen Law
369 Pine Street
Suite 506
San Francisco, CA 94104

William J. Wyrick
Cafardi Ferguson Wyrick & Weis
2605 Nicholson Road
Building II, Suite 2201
Sewickley, PA 15143
         Counsel for Appellee


––––––


OPINION OF THE COURT

––––––

FISHER, *Circuit Judge*.

Session replay code is a script[1] of computer code that enables a company to track how internet users browse and interact with its website. It captures a user's mouse movements, clicks, keystrokes, and more. A session replay code provider then aggregates the data into a video for the company reenacting the user's visit. This can then be used to improve website functionality and user experience.

Amber Cook visited GameStop's retail website, and her interactions were captured by Clarity, a session replay code provided by Microsoft. She moved her mouse, clicked links, typed in a search bar, and added a product to her "cart." But she did not input any sensitive or personal information. Cook sued GameStop for intrusion upon seclusion and violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act (WESCA). The District Court held that Cook did not allege a concrete injury sufficient for Article III standing and dismissed her suit with prejudice. Cook appeals. We agree with the District Court that dismissal is proper, but we will modify the District Court's order so that the dismissal will be without prejudice.

## I.

We start by describing the technology as alleged. GameStop installed a type of session replay code from Microsoft called Clarity on its website. When a user visits GameStop's website, Clarity delivers code to the user's browser instructing the browser to send "'event' data to a designated third-party server." App. 37 ¶ 24. This allows Clarity to "capture[] a user's interactions with [the] website, logging every website user's mouse movements and clicks,

---

[1] A script is a set of instructions or commands written in a programming language that tells a computer what to do.

scrolling window resizing, user inputs, and more." App. 42 ¶ 46. The information captured "can then be used to play back a user's journey through a website, showing how they interacted with site navigation, calls to action, search features, and other on-page elements." App. 42–43 ¶ 47. The code also assigns "a specific user ID to each website visitor so their website use and interactions can be monitored over time." App. 42 ¶ 46.

While in Pennsylvania, Cook visited GameStop's website. She navigated the website by hovering over and clicking on various products, and by typing terms into the search bar. Though Cook never purchased anything during her visit, she added a product to her shopping cart by using her mouse to click "add to cart." App. 45 ¶ 58. The instant Cook visited the website, the session replay code technology began recording her interactions. There is a privacy policy describing the information collected by session replay code, but it is "buried at the very bottom of the website." App. 49 ¶ 72.

Cook sued GameStop, alleging that it violated WESCA and committed intrusion upon seclusion by using session replay code on its website. Cook brought her claims as a putative class action on behalf of herself and "[a]ll natural persons in Pennsylvania whose Website Communications were captured through the use of Session Replay Code embedded in www.gamestop.com." App. 49 ¶ 73. GameStop moved to dismiss the first amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). It argued that she lacked Article III standing because she failed to allege an injury and, alternatively, that she failed to state a claim.

The District Court agreed and granted GameStop's motion under Rule 12(b)(1). The District Court held that Cook lacked Article III standing to bring her claims because she did not allege a concrete harm. It rejected Cook's argument that

the mere recording of her website activity by GameStop was sufficient to confer standing, citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), which clarified that a plaintiff must allege harms analogous to those traditionally recognized at common law. It concluded that Cook's harms were not analogous to the traditional intangible harms of disclosure of private information and intrusion upon seclusion because nothing "could connect her browsing activity to *her*." App. 8. Concluding that amendment would be inequitable and futile, it dismissed with prejudice. In the alternative, it held that she failed to "plead the necessary facts to support her claims for violation of [WESCA] or intrusion upon seclusion." App. 2. Cook appeals.

## II.[2]

"We exercise *de novo* review of a dismissal for a lack of standing, 'accepting the facts alleged in the complaint as true and construing the complaint in the light most favorable to the non-moving party.'" *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 141 (3d Cir. 2024) (quoting *Potter v. Cozen & O'Connor*, 46 F.4th 148, 153 (3d Cir. 2022)). "[W]e review the District Court's dismissal of the complaint with prejudice for an abuse of discretion." *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 234 (3d Cir. 2013). The District Court has abused its discretion if it based that dismissal "on an erroneous view of the law." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

## III.

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2) (diversity in class action lawsuits). We exercise appellate jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts).

Under Article III of the United States Constitution, the power of the federal judiciary "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. art. III, § 2). Article III standing doctrine ensures that we do not exceed our power by "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court." *Id.* at 338. To establish standing under Article III, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

This appeal concerns only the first element of the standing analysis. Cook argues that GameStop's violation of WESCA satisfies the injury-in-fact requirement. WESCA, which supplements its federal counterpart, the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*; *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125–26 (3d Cir. 2022), prohibits the interception of electronic communications without prior consent, *see* 18 Pa. Cons. Stat.

§§ 5704(4), 5725(a).[3] She says she suffered an injury in fact due to GameStop's violation of WESCA because her "privacy was invaded when her communications with . . . GameStop's website were intercepted" by the session replay code. Appellant's Br. 11.

### A.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An alleged statutory violation is not necessarily an injury in fact; "a concrete injury" is still required. *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341). That is because the legislature "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* (quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)). We must still "independently decide" if the plaintiff has suffered a concrete injury. *Id.* "An injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a

---

[3] In *Popa v. Harriet Carter Gifts*, an online shopper sued a retail website alleging that a third-party browser intercepted her data while she shopped online, violating WESCA. 52 F.4th at 124. The shopper, like Cook, "clicked links, used the search function, and . . . added an item to her cart." *Id.* The issue on appeal was whether the third party was liable under WESCA. *Id.* at 126. Although we proceeded to the merits, the issue of Article III standing was never analyzed. And "a summary and unexplained jurisdictional ruling . . . has no precedential effect." *Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 251 (3d Cir. 2016).

defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (citation modified).

"Traditional tangible harms, such as physical harms and monetary harms," are considered "[t]he most obvious" concrete injuries. *Id.* at 425 (citation modified). But certain intangible harms are also concrete. "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* Disclosure of private information and intrusion upon seclusion are examples. *Id.* That is not to say all intangible harms must replicate forms of traditional relief. "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Spokeo*, 578 U.S. at 341).

To determine whether a plaintiff has suffered a concrete injury, we ask "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." *Barclift*, 93 F.4th at 145 (quoting *TransUnion*, 594 U.S. at 417). So "while [a plaintiff] does not need to exactly duplicate a traditionally recognized harm, [he or she] must still analogize to a harm of the same character of previously existing legally cognizable injuries." *Id.* at 146 (citation modified).

Bearing this framework in mind, we must consider how "close" the relationship of Cook's asserted harm must be to a traditional harm comparator. *Id.* at 142. While some circuits have required a strict "element-based approach, wherein a plaintiff's alleged harm must not lack any element of the comparator tort that was essential to liability at common law," our approach is not so rigid. *Id.* at 144. We "compare the kind

of harm a plaintiff alleges with the kind of harm caused by the comparator tort." *Id.* at 144–45.

B.

Cook alleged that GameStop's WESCA violation caused the intangible harm of invasion of privacy. She says the alleged harm is closely related to harm caused by the privacy torts of disclosure of private information and intrusion upon seclusion. The District Court rejected Cook's argument that "the mere fact that GameStop recorded *any* information about [her] visit to GameStop's website is injury enough to give her standing to sue." App. 5. We analyze each of Cook's comparator torts in turn.

1.

Disclosure of private information is also known as "unreasonable publicity given to another's private life." *Barclift*, 93 F.4th at 145. "A defendant is liable under this tort when he [or she] 'gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Id.* (quoting Restatement (Second) of Torts § 652D (1977)). The harm is "the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny." *Id.* at 145–46 (quoting *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023)). "If there are no grounds to believe that the information will result in humiliation, then there is no comparable harm . . . ." *Id.* at 147. Additionally, "harm from disclosures that remain functionally internal are not closely related to those stemming from public ones." *Id.* at 146.

We recently examined this tort as a comparator in *Barclift*. There, a plaintiff alleged a collection agency violated the Fair Debt Collection Practices Act when, without her

consent, it shared her personal information with a third-party mailing vendor, which then mailed her a collection notice regarding her outstanding debt for medical services. *Id.* at 139–40. We held "the type of injury [the plaintiff] alleged 'is not remotely analogous to the harm caused by the tortious public dissemination of sensitive facts about another's private life.'" *Id.* at 148 (quoting *Nabozny*, 84 F.4th at 737–38). We explained that when "communication of personal information only occurs between a debt collector and an intermediary tasked with contacting the consumer, the consumer has not suffered the kind of privacy harm traditionally associated with public disclosure." *Id.* at 146.

Similarly, the harm Cook alleged is not analogous to "the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny." *Id.* at 145–46 (citation modified). First, the information captured by the session replay code was not sensitive or personal. Cook alleged that the code intercepted data regarding her "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time." App. 30 ¶ 1. Cook said that during a visit to GameStop's website, she "browsed for different products for sale[,] . . . communicated with GameStop's website by using her mouse to hover and click on certain products and typing search words into the search bar," and "selected a product to add to her shopping cart by clicking 'add to cart.'" App. 45 ¶ 58. Cook did not—and could not plausibly—allege that a disclosure of this information resulted in embarrassment or humiliation. Furthermore, she did not share her name, contact information, address, or billing information while on GameStop's website. Cook alleged that GameStop "obtain[ed] certain information about her device [and] browser" and "create[d] a unique ID and

profile for her." App. 45 ¶ 60. But she did not allege that GameStop identified her through this information. She alleged only that "[w]hen a user eventually identifies themselves"—something Cook never did—"the provider can then . . . back-reference all of that user's other web browsing." App. 39 ¶ 35.

Second, even assuming the information was the type that could cause Cook humiliation under "public scrutiny," *Barclift*, 93 F.4th at 146 (citation modified), the information was never publicized or even publicly disclosed. Cook's allegations concern disclosure of information to Microsoft, a third-party vendor to GameStop, not the broader public. Cook's alleged harm is therefore not analogous to the harm associated with the tort of disclosure of private information.

2.

Intrusion upon seclusion is an intentional intrusion, "physical[] or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 260 (3d Cir. 2004) (quoting *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984)). "The tort may occur by (1) physical intrusion into a place where the plaintiff has secluded himself or herself; (2) use of the defendant's senses to oversee or overhear the plaintiff's private affairs; or (3) some other form of investigation or examination into plaintiff's private concerns." *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 621 (3d Cir. 1992).

Unlike the disclosure of private information, the harm caused by intrusion upon seclusion does not turn on the exposure of personal or sensitive information. That is because the tort "consists solely of an intentional interference with [the plaintiff's] interest in solitude or seclusion, either as to his person or as to his private affairs or concerns." Restatement

(Second) of Torts § 652B cmt. a (1977). "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the . . . information" acquired. *Id.* cmt. b. In *Susinno v. Work Out World, Inc.*, we recognized that an unsolicited telemarketing call—even one that does not involve private or sensitive information—disturbs the recipient's solitude. 862 F.3d 346, 352 (3d Cir. 2017). We held, therefore, that a statute prohibiting such unsolicited calls "protect[s] the same interests implicated in the traditional common law cause of action" of intrusion upon seclusion. *Id.*

Cook conclusorily alleged that session replay code's capability is the "electronic equivalent of 'looking over the shoulder' of each visitor to the GameStop website for the entire duration of their website interaction." App. 31 ¶ 2. And she says her "electronic communications with GameStop" were presumed private. Appellant's Br. 39–40. But "[m]ost of us understand that what we do on the Internet is not completely private." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016). And, for the same reasons discussed above for the tort of disclosure of private facts, none of the information Cook entered on GameStop's website was personal or sensitive. So, unlike the recipient of an unsolicited telemarketing call, Cook cannot plausibly allege that there was an intrusion of her solitude or seclusion as to her person or private affairs. Therefore, Cook's alleged harm is not analogous to the harm associated with intrusion upon seclusion, and she lacks Article III standing to pursue her common law claim as well.

## C.

Cook argues that "WESCA codifies a presumption of privacy in *all electronic communications*." Appellant's Br. 45. She claims, "as a matter of state policy," that "the interception of electronic communications does not include a precondition

12

that the claimant have a 'reasonable expectation of privacy.'" Appellant's Br. 45 (quoting App. 7). She asserts that "the statute's expansion of protection to a wider range of information than would be protected by the common law is *precisely* the type of 'elevation' of an intangible harm into a concrete injury that *Spokeo* and *TransUnion* permit." Appellant's Br. 46.

This misconstrues the meaning of "elevation" in *TransUnion*. A legislature may "elevate harms that exist in the real world" to make them legally actionable. *TransUnion*, 594 U.S. at 426 (quoting *Hagy*, 882 F.3d at 622) (citation modified). But it "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* (quoting *Hagy*, 882 F.3d at 622). Cook's theory contradicts this fundamental holding of *TransUnion*. The harm caused by intrusion upon seclusion necessarily accompanies an intrusion into a person's solitude or private affairs. Absent that type of intrusion, the harm Cook alleged is not similar.

Critically, *TransUnion* tells us to consider the plaintiff's concrete harm alleged, not the harm the statutory cause of action typically protects against. *See id.* at 426–27 ("[A]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law."). Cook's theory starts with GameStop's alleged violation of WESCA itself. She assumes that "her alleged harm from GameStop's WESCA violation satisfies the *Spokeo* test because, by protecting communications from unauthorized eavesdropping, the WESCA statute protects against the same *kind* of harm—an invasion of privacy—that has long been recognized at common law, not just by wiretapping statutes."

Appellant's Br. 37. Cook incorrectly implies that wherever there is a statutory violation of WESCA for tracking web browsing information, there also is an invasion of privacy and thus a concrete harm.[4]

Cook also argues that assessing "whether [she] established a 'reasonable expectation of privacy' in her communications with GameStop *before* deciding the question of standing . . . conflates standing with [the] merits." Appellant's Br. 41. She maintains that whether product preferences qualify as personal or sensitive information is a merits issue. But we always independently determine if allegations "affirmatively and plausibly suggest . . . standing to sue." *Knudsen v. MetLife Grp., Inc.*, 117 F.4th 570, 576–77 (3d Cir. 2024) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016)). And we have decided similar issues at the pleading stage. *Nickelodeon*, 827 F.3d at 295 n.205 (explaining that in an intrusion upon seclusion claim, we "may decide the 'highly offensive' issue as a matter of law at the pleading stage when appropriate"). Because Cook does not plausibly allege that she was secluded, in solitude, or that her website activity involved her private affairs, she does not allege a kind of harm sufficient for standing. This conclusion is not a premature merits determination, but an assessment of the plausibility of her alleged injury as it pertains to standing.

---

[4] Of course, that Cook lacks standing does not mean that no plaintiff can proceed in federal court to seek redress of web-browsing tracking under WESCA. *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1248 (11th Cir. 2022) ("Our standing inquiry centers on whether a given plaintiff has pleaded injury . . . . The fact that one plaintiff . . . has not pleaded injury under this statute does not show that no one else can or will.").

D.

Cook also relies on two of our cases—*Nickelodeon* and *Google II*—which held plaintiffs suffered a concrete harm from the tracking of their internet browsing activity. For the reasons that follow, these cases are not controlling.

In *Nickelodeon*, we considered whether a concrete injury occurred when a website operator stated it would not collect the personal information of children visiting Nick.com, but did so anyway. *Nickelodeon*, 827 F.3d at 269. Cook highlights that we said the harm was "clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior." *Id.* at 274. We held the "unlawful disclosure of legally protected information" was a "clear *de facto* injury." *Id.*

Cook's allegations are materially different. Principally, Nick.com promised not to collect information. Nick.com's registration form included a message for parents of children who wanted to register for an account: "HEY GROWN-UPS: We don't collect ANY personal information about your kids. Which means we couldn't share it even if we wanted to!" *Id.* at 269. By contrast, Cook alleged only that "GameStop [did] not ask website visitors . . . for prior consent before" collecting web browsing activity. App. 48 ¶ 70.

In *Google II*, we considered whether a concrete injury occurred when Google "bypass[ed] Safari and Internet Explorer privacy settings and track[ed] internet-user information" by creating a web browser cookie. *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 321 (3d Cir. 2019) (*Google II*). We held that the alleged injury was sufficiently concrete. "History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization. Privacy torts have

15

become 'well-ensconced in the fabric of American law.'" *Id.* at 325 (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017)).

Cook says these cases are controlling because "they involved nonconsensual tracking of individuals' internet browsing." Appellant's Br. 30. But the allegations in *Google II* and *Nickelodeon* were "indistinguishable" from one another—and distinguishable from this case—because the "plaintiffs alleged that a third party . . . tracked their personal internet browsing information in violation of the third party's own promises not to do so." *Google II*, 934 F.3d at 325. As stated above, GameStop made no promise to refrain from collecting information, and, in fact, disclosed what information it would collect, albeit in an allegedly inconspicuous location on its website.

\* \* \*

In sum, Cook did not suffer a concrete injury. Her alleged harm is not the kind of harm caused by the privacy torts of disclosure of private information and intrusion upon seclusion. Because Cook has not suffered a concrete injury, she did not adequately allege an injury in fact. We therefore conclude that Cook lacks Article III standing.[5]

## IV.

The District Court correctly dismissed Cook's amended complaint for lack of jurisdiction, but it legally erred in dismissing it with prejudice and consequently abused its

---

[5] Because Cook lacks Article III standing, we are precluded from addressing the merits of her WESCA and intrusion upon seclusion claims. *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 291 n.8 (3d Cir. 2023).

discretion. Cook does not raise this issue in her brief, but because it implicates our subject matter jurisdiction, it cannot be waived or forfeited, and we must consider it independently. *See Vuyanich v. Smithton Borough*, 5 F.4th 379, 385 (3d Cir. 2021).

The District Court noted that Cook failed to submit a second amended complaint to cure the jurisdictional defect and, in fact, conceded that the defect could not be cured. It therefore concluded that "amendment would be inequitable and futile and [granted] GameStop's motion to dismiss with prejudice." App. 12. "Because the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper." *Barclift*, 93 F.4th at 148 (quoting *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 n.7 (3d Cir. 2017)). Even when a district court determines that granting leave to amend would be futile, *id.* at 140, the "general rule applies" and a dismissal for lack of Article III standing must be "without prejudice," *id.* at 148. So we will modify the District Court's order to dismiss the amended complaint without prejudice and affirm that order as modified.

## V.

For the foregoing reasons, we will affirm the District Court's order to dismiss the complaint without prejudice and affirm the order as modified.